IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

GRACE SESSIONS, *on behalf*   :
*of herself and all others similarly*  :
*situated*,   :
  :
    Plaintiff,   :
  :
V.   :   Civil Action No. 1:17-CV-01600-LMM
  :
BARCLAYS BANK DELAWARE,   :
  :
    Defendant.   :
_____:

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S
MOTION FOR JUDGMENT ON THE PLEADINGS [Doc. 33]**

Barclays moves the Court to dismiss Plaintiff's Complaint, alleging she has failed to adequately place it on notice of a plausible claim for violations of the Telephone Consumer Protection Act ("TCPA"). Because the factual allegations in Plaintiff's Complaint adequately state a claim upon which relief can be granted, Defendant's motion must be denied.

## I.   PLAINTIFF'S COMPLAINT ALLEGES TCPA VIOLATIONS.

The complaint alleges that Defendant used an "automatic telephone dialing system" to call her cell phone number in violation of the TCPA and the regulations promulgated thereunder, 47 U.S.C. § 227(b)(1)(A)(iii); 47 C.F.R. § 64.1200(a)(1)(iii). Doc 1-1, ¶ 43. "[T]o demonstrate a violation of the TCPA, the

1

Plaintiff need only show that [Defendant] called a number assigned to a cellular telephone service using an automatic dialing system or prerecorded voice." *Breslow v. Wells Fargo Bank, N.A.*, 857 F.Supp.2d 1316, 1319 (S.D. Fla. 2012) *aff'd by* 755 F. 3d 1265 (11th Cir. 2014). "The TCPA, at least before the wordy analysis of lawyers, courts, and agencies gets to it, simply prohibits 'automatic' dialing… If equipment automatically dials numbers, it cannot be used to call cell phones." *Hunt v. 21st Mortg. Corp.*, 2013 WL 12343953, at *4 (N.D. Ala. Oct. 28, 2013) (finding "[t]here is no need for deeply technical interpretations" of ATDS).

The TCPA defines an automatic telephone dialing system ("ATDS") as "equipment which has the capacity — (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1). Similarly, though perhaps more clearly, the regulation at issue defines an ATDS as "equipment which has the capacity to store or produce telephone numbers to be called using a random or sequential number generator and to dial such numbers." 47 C.F.R. § 64.1200(f)(2).[1]

Plaintiff's Complaint sufficiently alleges that Defendant used an ATDS to place the subject calls to Plaintiff and the putative class.  In her Complaint, Plaintiff alleged specific facts about the calls, which lead to the plausible inference

---

[1]     The D.C. Circuit did not overrule, or even address, the regulation's definition.

that an ATDS was used. *See* Doc. 1-1, at ¶¶ 21-29 (alleging that Barclays made repeated calls using an ATDS to Plaintiff, that the calls included "dead air" silence of approximately five seconds when Plaintiff answered, and that Plaintiff at times received multiple calls a day after requesting that the calls stop). In addition, the Complaint alleges facts about the dialing system Barclays used to place these calls. *Id.* at ¶¶ 30-39 (alleging that Barclays' system stores phone numbers, that the phone numbers are generated from the stored database to be called at random or in a sequence [i.e., are stored *to be called* using a random or sequential number generator], and that the system in fact dials such numbers). These facts place Barclays on notice of what the case is about, and suggest a plausible entitlement to relief. For these reasons, the Court should deny this motion and permit the parties to present factually-based arguments on summary judgment or at trial.

This Court should reject Barclays' statutory contortions that ignore the plain meaning of the text and render swathes of the statute unexplained or meaningless. As detailed below, the plain language of the TCPA includes the disjunctive "or," meaning the definition of ATDS must include systems, like the one alleged in the Complaint, that have the capacity to *store* telephone numbers, regardless of whether or not they *produce* the numbers. *See Bourff v. Rubin Lublin, LLC*, 674 F. 3d 1238, 1241 (11th Cir. 2016) (explaining the use of "or" in a statute). The definitions then provide that the system store (or produce) such phone numbers "*to*

*be called* using a random or sequential number generator." 47 C.F.R. §
64.1200(f)(2); *see also* 47 U.S.C. § 227(a)(1) (including the words "to be called"
immediately preceding the phrase "using a random or sequential number
generator"). Finally, the definitions require that the system have the capacity to
actually dial such numbers. Plaintiff has alleged these facts.

Plaintiff's Complaint adequately and sufficiently alleges that Defendant
utilized an ATDS to place the calls at issue. These factual allegations are sufficient
to state a claim upon which relief can be granted. Moreover, Plaintiff's allegations
that Barclays' system calls telephone numbers from a stored database is completely
consistent with the use of an ATDS, as the statute specifically encompasses
systems that *store* telephone numbers. *See* 47 U.S.C. § 227(a)(1).

## II. *ACA Int'l v. FCC.*

In *ACA International*, the D.C. Circuit considered several challenges to a
2015 Declaratory Ruling by the FCC, including what constitutes an ATDS. *ACA
Int'l v. Fed. Commc'ns Comm'n*, 885 F.3d 687 (D.C. Cir. 2018). The Hobbs Act
gives the Courts of Appeals the exclusive jurisdiction to "enjoin, set aside, suspend
(in whole or in part), or to determine the validity of" final orders of the FCC. 28
U.S.C. § 2342.  Of course, to the extent the D.C. Circuit invalidated certain
portions of the FCC's Order, this Court is bound by that determination that the
Order is invalid. *Peck v. Cingular Wireless, LLC*, 535 F. 3d 1053, 1057 (9th Cir.

2008).  However, the Hobbs Act does not create inter-Circuit *stare decisis*, it

merely requires the Court to interpret the statute in the absence of the vacated

Order. *Id.* ("In the absence of an agency interpretation of the statute, we examine

section 332(c)(3)(A) as we would any other statute."). Defendant appears to agree

on this point. *See* Doc. 33, p. 2 ("This overruling of the FCC's prior guidance

means that the statutory definition of ATDS controls.").

 *ACA International* merely considered whether a 2015 Declaratory Ruling

issued by the Federal Communications Commission was "arbitrary, capricious, an

abuse of discretion, or otherwise not in accordance with law" under the

Administrative Procedure Act, 5 U.S.C. § 706(2)(A).  *ACA International* did <u>not</u>

decide what constitutes an ATDS. Instead, the Court found that the FCC's 2015

Order contained two competing definitions of ATDS, either of which was

plausible. The Court struck down the order on the ground that, in its view, two

competing definitions of ATDS were mutually exclusive:

> So which is it: does a device qualify as an ATDS only if it can generate
> random or sequential numbers to be dialed, or can it so qualify even if it
> lacks that capacity? The 2015 ruling, while speaking to the question in
> several ways, gives no clear answer (and in fact seems to give both answers).
> It might be permissible for the Commission to adopt either interpretation.
> But the Commission cannot, consistent with reasoned decision making,
> espouse both competing interpretations in the same order.
> ***
> In short, the Commission's ruling, in describing the functions a device must
> perform to qualify as an autodialer, fails to satisfy the requirement of
> reasoned decisionmaking. The order's lack of clarity about which functions

> qualify a device as an autodialer compounds the unreasonableness of the
> Commission's expansive understanding of when a device has the "capacity"
> to perform the necessary functions. We must therefore set aside the
> Commission's treatment of those matters.

*ACA Int'l*, 885 F.3d at 702-03.

The D.C. Circuit also found that the FCC's interpretation of "capacity" was arbitrary and capricious because "it would appear to subject ordinary calls from any conventional smartphone to the Act's coverage, an unreasonably expansive interpretation of the statute," and therefore overturned that section. *ACA Int'l,* 885 F.3d at 692. Plaintiff herein does not assert the "theoretical" capacity of Defendant's dialer. Rather, Plaintiff asserts that the *capacity* of Defendant's dialing system as alleged is how it *actually* operated at the time of the calls at issue (i.e., present capacity). *See Hunt v. 21st Mortgage Corp.*, 2013 WL 5230061, at *4 (N.D. Ala. Sept. 17, 2013) (defining "capacity" 2 years prior to the 2015 Order).

Barclays wrongly asserts that "[t]he D.C. Circuit recognized, as did the FCC, that there is a distinction between the ability to generate random or sequential numbers and calling from a list of numbers." Doc. 33, p. 10. The only thing the D.C. Circuit recognized was that the *FCC* had made such a distinction. *ACA Int'l,* 885 F.3d at 702-03. The D.C. Circuit found that the *FCC* could not 1) make such a distinction, and 2) then deny any such distinction exists in the same Order. *Id.* The D.C. Circuit recognized that "[a]nytime phone numbers are dialed from a set list,

the database of numbers must be called in *some* order—either in a random or some other sequence." *Id.* at 701.

In any case, *ACA International* did not opine on whether any specific equipment constitutes an ATDS.  No facts were before the court in *ACA*; only briefing by industry groups seeking to eviscerate the TCPA and the FCC Declaratory Ruling seeking to protect consumers from – literally – billions of nonconsensual, automated phone calls.  The court did not discuss or consider whether any telephone equipment, like the Aspect dialer used by Barclays, does or does not constitute an ATDS. It is now up to this Court to interpret the statute anew and apply it to the facts before it, *see Peck*, 535 F. 3d at 1057, to decide whether Plaintiff has plausibly alleged facts that support a TCPA claim.

## III.   LAW AND ARGUMENT

### A.   Pleading Standard.

"Federal Rule of Civil Procedure 8(a)(2) requires that 'a pleading… contain a 'short and plain statement of the claim showing that the pleader is entitled to relief,'" in order to "give the defendant 'fair notice of what the ... claim is and the grounds upon which it rests.'" *Palm Beach Golf Ctr.-Boca, Inc. v. John G. Sarris, D.D.S., P.A.*, 781 F. 3d 1245, 1259 (11th Cir. 2015) (*quoting Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  "To avoid dismissal, a complaint must include only 'enough facts to state a claim to relief that is plausible on its face.'" *Hashw v. Dept. Stores*

7

*Nat'l Bank*, 986 F.Supp.2d 1058, 1059 (D. Minn. 2013) (*quoting Twombly*, 550 U.S. at 547). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft,* 556 U.S. at 678 (*quoting Twombly*, 550 U.S. at 556).

In deciding a motion to dismiss, the Court accepts the plaintiff's allegations as true and considers the complaint's allegations in the light most favorable to the plaintiff. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007). The complaint must be construed liberally, and all reasonable inferences arising therefrom must be interpreted in the light most favorable to the plaintiff. *Twombly,* 550 U.S. at 554–56.

## B.    The Non-Technical Allegations in the Complaint Satisfy Rule 8.

The simplest factual allegations in the Complaint that Barclays made ATDS calls to Plaintiff's cell phone are sufficient to support a cause of action under the TCPA. The Eleventh Circuit considered a motion to dismiss in the context of a TCPA junk fax case in *Palm Beach Golf Ctr.-Boca, Inc.*, 781 F.3d 1245. *Palm Beach Golf* reversed dismissal of the case, holding that the following phrase taken from the complaint "was sufficient to satisfy Rule 8(a)(2)'s liberal pleading standard and give fair notice" of what the misappropriation of fax machine paper claim was, and the grounds upon which it rested:

8

**"unsolicited faxes ... permanently misappropriated [Plaintiff's] fax machine[ ], toner, paper, and employee time to Defendant['s] own use."**

*Id*. at 1260-61 (emphasis added).

Similarly here, the Complaint identifies the phone number Barclays called, ¶ 21, and explains that Plaintiff is suing Barclays under the TCPA for making calls to her cell phone using an "automatic telephone dialing system." Doc. 1-1, ¶¶ 25, 39. The Complaint also alleges facts supporting her position that Barclays' violations were intentional. *Id.* ¶¶ 42-53 (alleging that Barclays called Plaintiff using an ATDS after Plaintiff requested the calls to cease, and that it continues to use an ATDS illegally despite knowing of the TCPA from prior litigation).

 Barclays has demonstrated that it has "fair notice" of the claims against it. It filed an affidavit testifying that calls were made using an "Aspect Unified IP system,"[2] Doc. 27, p. 15, and it produced four files extracted from its system regarding calls to Plaintiff in its efforts to obtain settlement or dismissal. Barclays knows exactly what this case is about, and the Complaint plausibly suggests entitlement to recover. Accordingly, its Motion should be denied.

---

[2]     Aspect Unified IP has been held to be an ATDS multiple times under the FCC's standard, *Espejo v. Santander Consumer USA, Inc*., No. 11-8987, 2016 WL 6037625, at *5 (N.D. Ill. Oct. 14, 2016) ("this Court joins those in this circuit and elsewhere in holding that a predictive dialer such as Santander's Aspect system falls within the scope of the TCPA."), including well before this action was filed. *Castro v. Green Tree Servicing LLC*, 959 F. Supp. 2d 698, 705 (S.D.N.Y. 2013).

C.     **Plaintiff's Allegations about the Calls Satisfy Rule 8(a)(2).**

1.     **Only Basic Factual Allegations are Required to Establish the Inference that an ATDS was Used.**

Although the factual allegations contained in the Complaint are more than sufficient, it is impracticable – if not impossible – for many TCPA plaintiffs to obtain detailed, technical information regarding a defendant's phone system before discovery. Requiring a plaintiff to allege more detailed facts than those Ms. Sessions' has already included about Defendant's phone equipment is not required.

In *Torres v. Nat'l Enter. Sys., Inc.,* the court held that it is "virtually impossible, absent discovery, for any plaintiff to gather evidence regarding the type of machine used for a communication left on a plaintiff's voicemail." 2012 WL 3245520, at *3 (N.D. Ill. Aug. 7, 2012); *See also Lozano v. 20th Century Fox Film Corp.,* 702 F.Supp.2d 999, 1010 (N.D. Ill.2010).  Likewise, courts, including this Court, have held that a plaintiff need not allege *any* facts to support an allegation that an ATDS was used by a defendant; rather, allegations that the calls were placed with an ATDS are sufficient to plead a claim. *See*, *e.g.*, *Mitchell v. Northside Hospital*, No. 14-87, Doc. 12 (N.D. Ga. Sept. 9, 2014); *De Los Santos v. Millward Brown, Inc.*, No. 13-80670, 2014 WL 2938605, at *3 (S.D. Fl. June 30, 2014) ("To state a claim under the TCPA, Plaintiff need only allege that Defendant used an autodialer."); *Hashw*, 986 F.Supp.2d at 1061 ("Here, Hashw has pleaded

that an ATDS was used to make the calls to his cellular phone. As the Court must accept that allegation as true at this juncture, nothing more is required to state a claim for relief under the TCPA.") (internal citations omitted); *Buslepp v. B&B Ent., LLC*, No. 12-60089, 2012 WL 1571410, at *1 (S.D. Fl. May 3, 2012) (denying motion to dismiss because "the allegation that Defendant used [an autodialer] ... is a factual allegation under *Twombly* and *Iqbal*"); *Reyes v. Saxon Mortg. Servs., Inc.*, No. 09-1366, 2009 WL 3738177, at *4 (S.D. Cal. Nov. 5, 2009) (allegations that defendant "frequently made calls to Plaintiff's cell phone using an automatic telephone dialing system … and an artificial or prerecorded voice[,]" and that plaintiff was "forced to bear the expense of these calls" sufficient to plead a TCPA claim); *Robinson v. Midland Funding, LLC*, No. 10-2261, 2011 WL 1434919, at *3 (S.D. Cal. April 13, 2011) ("although Plaintiff's allegation that Defendant made calls to his 'cellular telephone' via an 'automatic telephone dialing system' ... using 'an artificial or prerecorded voice for which he was charged' seem vague, neither (TCPA) section 227(b)(1)(A)(iii) nor Federal Rule of Civil Procedure 8 requires Plaintiff to plead his claim with particularity").

### 2.   Plaintiff Alleged Facts that Infer the Use of an ATDS.

In addition to the allegations that Defendant used an ATDS, Plaintiff included additional, circumstantial allegations about the calls that plausibly suggest entitlement to relief. Many courts have denied motions to dismiss when the

plaintiff recites the statutory language, plus makes additional allegations indicating the reasons for her beliefs. *Reid v. GE Capital Retail Bank,* No. 14-079, 2014 WL 6981426, at *2 (S.D. Ga. Dec. 9, 2014) ("In light of a plaintiff's difficulty in obtaining information about the equipment used to make a call prior to discovery, a plaintiff can avoid dismissal by alleging facts about the circumstances surrounding the call sufficient to create a plausible inference that the call was made using an A.T.D.S."); *Vance v. Bureau of Collection Recovery, LLC,* No. 10-6324, 2011 WL 881550, *3 (N.D. Ill. Mar. 11, 2011); *Stricter v. Bijora, Inc.,* 11-3468, 2012 WL 5386089, *3 (N.D. Ill. Oct. 30, 2012); *Hickey v. Voxernet LLC*, 887 F. Supp. 2d 1125, 1130 (W.D. Wash. 2012) ( "allegation[s] regarding the generic content and automatic generation of the message [are] sufficient to infer the use of an ATDS").

The court in *Johansen v. Vivant, Inc.,* No. 12-7159, 2012 WL 6590551, *3 (N.D. Ill. Dec. 18, 2012), held that it was unreasonable to require a plaintiff, without the benefit of discovery, to elaborate on specific technical details of a defendant's alleged ATDS. *Id.* The court did, however, find that the plaintiff could describe the phone messages he received in layman's terms or provide the circumstances surrounding them to establish his belief that the messages were pre-recorded or delivered via an automatic device. *Id.*

Likewise, in *Gragg v. Orange Cab Co.*, No. 12-0576, 2013 WL 195466, *3 n.3 (W.D. Wash. Jan. 17, 2013), the court held that "Plaintiffs alleging the use of a

particular type of equipment under the TCPA are generally required to rely on indirect allegations, such as the content of the message, the context in which it was received, and the existence of similar messages, to raise an inference that an automated dialer was utilized. Prior to the initiation of discovery, courts cannot expect more."

This Court recently addressed the pleading standards for a TCPA claim involving text messages in *Jenkins v. LL Atlanta, LLC*, No., 14-2791, 2016 WL 1029524 (N.D. Ga. Mar. 9, 2016). In that case, the court held that the plaintiff sufficiently alleged that the defendant used an ATDS by pleading that the texts were sent using an ATDS, the impersonal nature of the messages, and the use of a short code, and found that these facts stated a plausible claim for relief to allow the court to draw the "reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at *4 (citing *Iqbal*, 556 U.S. at 678.).

As in the above cases, Plaintiff's Complaint in this action contains additional allegations that buttress the general (and sufficient) allegation that Barclays used an ATDS to make the calls at issue, as follows:

23.   Plaintiff has never been a BARCLAYS customer.

24.   Plaintiff has never given BARCLAYS permission to call her cellular telephone number.

25.   BARCLAYS has initiated a series of telephone calls to Plaintiff's cellular telephone number using an automatic telephone dialing system.

13

26.     BARCLAYS used an automatic telephone dialing system to initiate calls to Plaintiff's cellular telephone number in order to collect on an allegedly past due or delinquent account, or alternatively, to solicit her to open an account.

27.     On or about December 16, 2015 as part of its dialing campaign, BARCLAYS initiated a call to Plaintiff during which Plaintiff clearly and unequivocally told the representative to cease calling her cellular telephone.

28.     Despite Plaintiff's demand on December 16, 2015 that BARCLAYS cease calling her cellular telephone, BARCLAYS continued to initiate calls to Plaintiff's cellular telephone number using an automatic telephone dialing system, at times initiating multiple calls during the same day.

29.     Plaintiff answered calls from BARCLAYS where at the beginning of the calls a "dead air" silence of five (5) seconds or more can be heard prior to a representative appearing on the line.

*See* Doc. 1-1, at ¶¶ 23-29.

"Dead air" as described in Paragraph 28 is a "telltale" sign of an ATDS. In fact, courts routinely find such allegations indicative of an ATDS. *Lemieux v. Lender Processing Ctr.*, 2017 WL 1166430, at *5 (S.D. Cal. Mar. 29, 2017) (allegation of pause and click sufficient); *Thomas v. Dun & Bradstreet Credibility Corp.*, 100 F.Supp.3d 937 (C.D. Cal. 2015) ("pause" sufficient); *Abante Rooter & Plumbing Inc. v. Nationwide Mut. Ins. Co.*, No. 17-3328, 2018 WL 573576, at *3 (N.D. Cal. Jan. 26, 2018) ("pause and clicking at beginning of call" sufficient); *Lofton v. Verizon Wireless*, No. 13-5665, 2015 WL 1254681, at *5 (N.D. Cal. Mar. 18, 2015) ("telltale pause" sufficient). These decisions recognize the proper Rule

8(a) standard, as well as "the difficulty a plaintiff faces in knowing the type of calling system used without the benefit of discovery." *Loveless v. A1 Solar Power, Inc.*, No. 14-1779, 2015 WL 4498787, at *3 (C.D. Cal. July 23, 2015).

Here, there is a clear inference that an ATDS was used based on the allegations that Barclays repeatedly called Plaintiff, including multiple times a day, even though she demanded that the calls stop, was not a customer of Barclays, and the five seconds of "dead air." *Id.* at ¶¶ 27-29. Such factual allegations and inferences are sufficient to satisfy the pleading standard for a TCPA claim. Accordingly, Barclays's Motion to Dismiss should be denied.

### D.    The concerns raised in *ACA International* dicta about the effects of a broad ATDS definition do not exist in this case.

The D.C. Circuit was concerned that the FCC's rulemaking had resulted in a definition of ATDS that was potentially overbroad. Instead of offering its own definition, however, the D.C. Circuit suggested that concerns regarding the breadth of the statutory ATDS definition could be addressed in subsequent orders, specifically suggesting that the FCC create an exception for smartphones, clarify the role that human intervention plays, and provide further guidance as to when equipment that has the capacity to "dial thousands of numbers in a short period of time" constitutes an autodialer. *See ACA Int'l*, 885 F.3d at 699, 703.

The D.C. Circuit also suggested that the FCC could interpret the phrase

"make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system … to any telephone number assigned to a cellular telephone service," 47 U.S.C. § 227(b)(1)(A)(iii), to limit the statute's scope to exclude ordinary person-to-person calls. For example, the court suggests that the "make any call … using…" language could have been interpreted differently so that only calls made using an ATDS's functionality were prohibited. *ACA Int'l*, 885 F.3d at 703–704.

The FCC may or may not take up such matters through subsequent rulemaking. Regardless, no reason exists to wait for the FCC in this case because the dialer at issue here falls squarely within the definition of an ATDS. None of the "smart phone" concerns that the D.C. Circuit expressed are present in this case. The dialer here stores telephone numbers; then it automatically generates numbers from the stored database to be called at random or in sequence, and it dials those numbers. Doc. 1-1, ¶¶ 33-35. There is no allegation or suggestion that Barclays used a mobile phone to make these calls. In fact, Barclays has conceded that it used an Aspect or Avaya dialer. Doc. 27, p. 15.[3]

Simply put, there is no concern that this Court would be adopting an

---

[3] It is clear that the calls at issue were placed with the Aspect system. If Barclays only used its Avaya PBX system to make the calls, it would have said so long ago rather than try to keep the facts hidden and proceed on technical pleading arguments. Aspect dialers have long been held to be ATDS. E.g. *Castro v. Green Tree Servicing LLC*, 959 F. Supp. 2d 698, 705 (S.D.N.Y. 2013).

overbroad definition of ATDS. It has long been established that an Aspect dialer is an ATDS. *See Castro* and *Espejo*, fn.2 (supra).

> **E.**   **The TCPA prohibits using equipment that "stores" numbers, then "generates" a "sequence" of numbers for calling, and then "dials" telephone numbers.**

Although Barclays attempts to generally argue that Plaintiff's allegations of ATDS are insufficient under *Iqbal*, which was rebutted above, it primarily argues for dismissal because the Complaint alleges that the telephone numbers were stored [in a database] *to be called* using a random or sequential number generator, rather than *produced* using a random or sequential number generator. Doc. 33, p. 16.  Defendant is taking a strained reading of the definition at odds with its plain reading, and one that renders much of the statute superfluous or nonsensical.

 "In determining the meaning of a statute or regulation, 'the first step is to determine whether the statutory language has a plain and unambiguous meaning by referring to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole.'" *SEC v. Levin*, 849 F. 3d 995, 1003 (11th Cir. 2017) (citation omitted). "If the statute's meaning is plain and unambiguous, there is no need for further inquiry." *Id.* (citation omitted). "To determine the plain meaning of a statute or regulation, we do not look at one word or term in isolation, but rather look to the entire statutory or regulatory context." *Id.* "[S]tatutes should be construed so that no clause, sentence, or word

shall be superfluous, void, or insignificant." *Id.* at 1004 (citation omitted).  Finally, "[b]ecause the TCPA is a remedial statute, it should be construed to benefit consumers." *Gager v. Dell Fin. Servs., LLC*, 727 F. 3d 265, 271 (3rd Cir. 2013); *Taylor v. Screening Reports, Inc.*, 294 F.R.D. 680, 685 (N.D. Ga. 2013) (remedial consumer protection statutes are liberally construed to protect the consumer).

"The TCPA, at least before the wordy analysis of lawyers, courts, and agencies gets to it, simply prohibits 'automatic' dialing… If equipment automatically dials numbers, it cannot be used to call cell phones." *Hunt v. 21st Mortg. Corp.*, 2013 WL 12343953, at *4 (N.D. Ala. Oct. 28, 2013) (explaining that "[t]here is no need for deeply technical interpretations" of an ATDS).  An ATDS is "equipment which has the capacity to store or produce telephone numbers to be called using a random or sequential number generator and to dial such numbers." 47. C.F.R. § 64.1200(f)(2); 47 U.S.C. 227(a)(1).

### 1.    Plaintiff Alleges that the System Stores Phone Numbers.

Barclays argues that Plaintiff's allegations that Defendant's system stored telephone numbers and that it intended to call Plaintiff's phone number are inconsistent with the use of an ATDS. Doc. 33, pp. 19-22. However, the plain language of these definitions includes the disjunctive "or," meaning the definitions of ATDS must include systems, like the one alleged in the Complaint, which can **either** store phone numbers **or** produce phone numbers. *See Bourff v. Rubin*

*Lublin, LLC*, 674 F. 3d 1238, 1241 (11th Cir. 2016) (explaining the use of "or" in a similarly worded consumer protection statute). Accordingly, Plaintiff's allegation that the system calls from a database of *stored* telephone numbers is consistent with the statute's specific reference to a system that *stores* telephone numbers.

### 2. The Numbers Are Stored *to Be Called* Using a Random or Sequential Number Generator.

The text of the TCPA requires that the system have the capacity to store (or produce) telephone numbers "*to be called* using a random or sequential number generator." 47 C.F.R. § 64.1200(f)(2); 47 U.S.C. § 227(a)(1).  The modifier "using a random or sequential number generator" follows the words "to be called." *Id.*[4] Applying the nearest-reasonable-referent cannon, the statement "using a random or sequential number generator" modifies the words "to be called." *See Parm v. Nat'l Bank of Ca., N.A.*, 835 F .3d 1331, 1336 (11th Cir. 2016) ("'When the syntax involves something other than a parallel series of nouns or verbs, a prepositive or postpositive modifier normally applies only to the nearest reasonable referent.'") (*quoting* Antonin Scalia & Bryan Garner, *Reading Law: The Interpretation of Legal Texts* 152 (2012)). If Congress wanted the postpositive modifier to modify "store or produce," the statute would read "equipment which has the capacity (A)

---

[4]   The statute and the regulation differ insofar as the regulation omits a comma. This doesn't change the reading, as the modifying phrase in *Parm* also included the comma.  To the extent this Court would read them differently, the regulation is entitled to deference.

to store or produce, using a random or sequential number generator, telephone numbers; and (B) to dial such numbers."  Instead, Congress wrote the statute to refer to the manner in which numbers are generated *to be called*, whether from a stored database or produced by the system.

There are at least two ways to *automatically* generate numbers from a stored database for dialing, either truly at random or in some sequence (e.g., a dialing algorithm). *See also ACA Int'l v. FCC*, 885 F. 3d 687, 701 (D.C. Cir. 2018) (recognizing that "[a]nytime phone numbers are dialed from a set list, the database of numbers must be called in *some* order—either in a random or some other sequence."). Of course, if the numbers are *not* automatically generated, a person can call stored telephone numbers by manual/cognitive selection at the time of the call, which would be *neither* random *nor* sequential.  For instance, using the redial function, traditional speed dialing,[5] or calling from a contact list (such as ordinary smart phones) would be *neither* random *nor* sequential because the person calling is manually choosing the telephone number to call at the time of the call, rather than having the number *automatically generated* from the stored database to call

---

[5] "Speed Dialing" refers to single digit dialing for frequently used telephone numbers.  For instance, it is, or was, common for telephones to allow persons to program frequently used numbers so that such numbers could be called by the press of a single button.  Because the caller would have to choose which person to speed dial at the time of the call and press the button, such a system would not be an ATDS. In such a case, the telephone itself does not randomly or sequentially generate the telephone number to be called – the person calling selects it.

the next number in queue. This automatic, system generation of the next number in the dataset *to be called* distinguishes an autodialer from other devices which merely store telephone numbers and then dial them at the caller's command.

Barclays would have the Court find that "generate" means to create something from thin air, only, but this is not so. For example, a windmill "generates" energy from wind, a juicy rumor "generates" buzz among elementary school kids and a dialing system "generates" a sequence of phone numbers to be called from the dialer administrator's database.

Accordingly, under the plain meaning of the statute, a system that "stores" a database of phone numbers, and "generates" such numbers to be called (either randomly *or* sequentially) from the stored database, and then dials such numbers, is an ATDS. This is precisely what the Complaint alleges. Doc. 1-1, ¶¶ 30-35.

### 3.    Plaintiff Alleges that the System Dials Such Numbers.

Of course, finally, an ATDS must actually dial the numbers.  Some systems do store telephone numbers and automatically generate the next number from the dataset to be called, but require a person to actually dial the number.  Such a system would not be an ATDS if it lacked the ability to dial (i.e., to actually make the call).  However, Plaintiff's Complaint plausibly alleges that the system in use by Barclays does, in fact, dial such numbers. Doc. 1-1, ¶¶ 25-26; 30; 34-35.

### 4. Barclays' Reading Would Render Much of the TCPA Superfluous and Nonsensical.

"'[S]tatutes should be construed so that no clause, sentence, or word shall be superfluous, void, or insignificant.'" *Levin*, 849 F. 3d at 1004. Barclays' interpretation would read the word *store* out of the statute, and make it nonsensical, by requiring numbers to be *produced* randomly or sequentially from thin air rather than generated randomly or sequentially from a *stored* database. In addition, Barclays' reading would cause the words "to be called" to become superfluous, because under its reading the "calling" would have been accomplished by merely using the words "equipment that has the capacity to produce telephone numbers using a random or sequential number generator and to dial such numbers." Plaintiff's reading is not only the plain reading, it is the only reading that gives meaning to the words "store" and "to be called," and the only reading that does not render the word "store" nonsensical.

In addition to the words "store" and "to be called," other portions of the TCPA also become superfluous or nonsensical if the Court were to adopt Barclays' definition. A plain reading of 47 U.S.C. § 227(b) clearly envisions *some* permissible uses of an ATDS. For instance, someone can use an ATDS for emergency purposes, if it has the consent of the called party, or is calling to collect a debt owed to the United States federal government, so long as doing so does not

simultaneously engage two or more lines of a multiline business. 47 U.S.C. § 227(b)(1)(A)(iii), (b)(1)(D).  In addition, the statute permits the FCC to make certain exemptions. 47 U.S.C. § 227(b)(2)(C).

If Barclays' interpretation that the TCPA only covers telephone numbers *produced* randomly from thin air, or *produced* sequentially from thin air, rather than generated from a stored database of numbers, were adopted, it would be impossible for any caller to have a meaningful consent policy.[6]  Consent would only exist as a matter of sheer coincidence, and – given the probabilities involved with a random ten-digit number hitting a cell phone user that gave their phone number to the caller – consent might *never* happen, *ever*. Moreover, even if a call were made for a permissible purpose (i.e., with consent or for an emergency), a caller calling numbers produced out of thin air would have no way of ensuring that it was not tying up multiple lines of a multiline business. 47 U.S.C. § 227(b)(1)(D).

Finally, the federal government exemption for collection calls would be irrelevant if collection calls were not generally subject to the TCPA. 47 U.S.C. § 227(b)(1)(A)(iii). After all, entities collecting government debt, or any debt, do not call random or sequential phone numbers from thin air seeking to collect a particular account; rather, they call from a list of numbers they believe will either

---

[6] Barclays' motion also does not explain what it contends "store" means. An alternative reading to the one proffered above is that an ATDS need only "store … telephone numbers to be called … and dial such numbers." 47 U.S.C. § 227(a)(1).

contact a debtor or assist in locating the debtor, such as the number of a neighbor or relative. Congress was fully aware that courts had interpreted the TCPA to apply to collection calls, and of the FCC's interpretation of an ATDS, when it enacted this exemption in 2015. *See* Pub. L. 114–74, § 301(a)(1)(A).

If Congress wanted to make equipment that automatically dials from a stored database excluded from the Act, it could have done so.  Instead, it enacted a *limited* exemption for debt collection calls owed to or guaranteed by the federal government.  *Id.* Congress' decision to not amend the ATDS definition, and to instead craft a special exemption for the federal government, signifies that Congress agrees with the longstanding application of the TCPA to automated calls made from a stored database. *See U.S. v. Rehaif*, 868 F.3d 907, 913 (11th Cir. 2017) ("The long time failure of Congress to alter [the law] after it had been judicially construed, and the enactment by Congress of legislation which implicitly recognizes the judicial construction as effective, is persuasive of legislative recognition that the judicial construction is the correct one.") (*quoting Apex Hosiery Co. v. Leader,* 310 U.S. 469, 488 (1940).

Finally, the TCPA permits an award of treble damages if a violation were found to be "willful or knowing." 47 U.S.C. § 227(b)(3). "For example, to [knowingly] violate section 227(b)(1)(A)(i), a defendant must know that he is using an 'automatic telephone dialing system' to place a 'call,' and that the call is

24

directed toward an emergency' line." *Lary v. Trinity Phys. & Fin. Svcs.*, 780 F. 3d 1101, 1107 (11th Cir. 2015). If an ATDS only included calls to numbers produced out of thin air, rather than from a stored database, then how could a caller ever *know* it was calling an emergency line (or, for that matter, a cell phone)?

Of course, all of these provisions are not superfluous, because the words *store* and *to be called* have meaning, which gives meaning to the rest to the statute. Plaintiff has adequately pleaded that the system used by Barclays *stores* telephone numbers *to be called* using a random or sequential number generator, and dials such numbers.

## IV.    CONCLUSION

Plaintiff has plausibly alleged the use of an ATDS.  She has alleged facts about the calls themselves and facts about how the calls were made.  Plaintiff's allegations that the calls were made from a database of stored telephone numbers is consistent with the TCPA's specific inclusion of the word "store." For the forgoing reasons, Plaintiff respectfully requests that this Court deny Defendant Barclays' Motion for Judgment on the Pleadings.

Respectfully submitted,

GRACE SESSIONS

Dated: May 7, 2018

By: /s/ Justin T. Holcombe
Justin T. Holcombe (Ga. Bar No. 552100)
Email: jholcombe@skaarandfeagle.com
Kris K. Skaar (Ga. Bar No. 649610)
Email: kskaar@skaarandfeagle.com
SKAAR & FEAGLE, LLP
133 Mirramont Lake Drive
Woodstock, GA 30189
Telephone:  (770) 427-5600
Facsimile:  (404) 601-1855

James M. Feagle (Ga. Bar No. 256916)
Email: jfeagle@skaarandfeagle.com
Clifton Dorsen (Ga. Bar No. 149254)
Email: cdorsen@skaarandfeagle.com
SKAAR & FEAGLE, LLP
2374 Main Street, Suite B
Tucker, GA 30084
Telephone: (404) 373-1970
Facsimile: (404) 601-1855

Alexander H. Burke (*pro hac vice*)
Email: aburke@burkelawllc.com
Daniel J. Marovitch (*pro hac vice*)
Email: dmarovitch@burkelawllc.com
BURKE LAW OFFICES, LLC
155 N. Michigan Ave., Suite 9020
Chicago, IL 60601
Telephone: (312) 729-5288
Facsimile: (312) 729-5289

*Counsel for Plaintiff*

**CERTIFICATE OF COMPLIANCE WITH LR 5.1B & 7.1D, NDGa.**

Pursuant to LR 7.1D, NDGa., I certify that this document has been prepared with one of the font and point selections approved by the court in LR 5.1B, to wit:

[x]    Times New Roman, 14 point.

**SKAAR & FEAGLE, LLP**

By:   /s/ Justin T. Holcombe
Justin T. Holcombe
Georgia Bar No. 552100
133 Mirramont Lake Drive
Woodstock, GA 30189
Telephone:  (770) 427-5600
Facsimile:  (404) 601-1855
Email:  jholcombe@skaarandfeagle.com

**CERTIFICATE OF SERVICE**

I, Justin T. Holcombe, counsel for Plaintiff, hereby certify that I have this day filed the within and forgoing Memorandum in Opposition to Defendant's Motion for Judgment on the Pleadings using the CM/ECF system, which shall serve to all counsel of record.

**SKAAR & FEAGLE, LLP**

By:   /s/ Justin T. Holcombe
Justin T. Holcombe
Georgia Bar No. 552100
133 Mirramont Lake Drive
Woodstock, GA 30189
Telephone:  (770) 427-5600
Facsimile:  (404) 601-1855
Email:  jholcombe@skaarandfeagle.com

27