IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

GRACE SESSIONS, on behalf of
herself and others similarly situated,

    Plaintiff,

v.

BARCLAYS BANK DELAWARE,

    Defendant.

CIVIL ACTION NO.
1:17-CV-01600-LMM

## ORDER

This case comes before the Court on Defendant's Motion for Judgment on the Pleadings [33]. After due consideration, the Court enters the following Order.

### I.    BACKGROUND[1]

Plaintiff Grace Sessions alleges that Defendant used an automatic telephone dialing system ("ATDS") without the prior express consent of the called party in violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. Dkt. No. [1-1] ¶ 1. Defendant is a bank that offers financial products and services nationwide, including consumer credit cards. Id. ¶¶ 11–13. According to Plaintiff, Defendant used an ATDS to call her cell phone multiple times for the purpose of collecting on a past due or delinquent account or to solicit her to open

---

[1] The facts relied upon in this Order are taken from the Complaint and are construed in the light most favorable to Plaintiff as the non-moving party.

an account. Id. ¶¶ 21–22, 25–26. Plaintiff has never been a customer of Defendant or given Defendant permission to call her. Id. ¶¶ 23–24. Plaintiff also alleges she specifically told Defendant to stop calling her after receiving a call on December 16, 2015. Id. ¶ 27. Nonetheless, she alleges Defendant's calls continued. Id. ¶ 28.

Plaintiff alleges that Defendant "uses contact center software which connects to its telephony hardware that together constitute a dialing system with the capacity to store telephone numbers, generate telephone numbers from a stored database to be called either at random or in a sequence, and to dial such numbers." Id. ¶ 30; see id. ¶¶ 32–33. Defendant's calls to Plaintiff were made using this system. Id. ¶¶ 31, 37. Plaintiff alleges that this system has the capacity to dial thousands of numbers in a short period of time from its stored database of numbers without human intervention. Id. ¶¶ 34–35. Plaintiff also alleges that Defendant's calls began with a "dead air" silence of five or more seconds before a live representative appeared on the line. Id. ¶ 29. According to Plaintiff, that is "indicative of the use of predictive dialing software or other similar software where a system initiates a call rather than a live human." Id. ¶ 36. In other words, Plaintiff alleges that Defendant's system uses software that predictively dials numbers until someone answers one of the calls, at which point a live representative goes on the call. Id. ¶¶ 29, 36–38.

Based on these allegations, Plaintiff brought suit on behalf of herself and others similarly situated against Defendant under the TCPA seeking injunctive

relief, monetary damages, and attorneys' fees. Id. at 12–17. Defendant removed the case to federal court on May 4, 2017. Dkt. No. [1]. On September 25, 2017, the Court stayed this action pending the resolution of consolidated action before the United States Court of Appeals for the District of Columbia Circuit ("D.C. Circuit") that concerned a number of issues including the definition of an ATDS. Dkt. No. [28]. The D.C. Circuit issued a decision on March 16, 2018. See ACA Int'l v. Fed. Commc'ns Comm'n, 885 F.3d 687 (D.C. Cir. 2018). Accordingly, this case was reopened and the Court held a telephone conference in this matter. Dkt. Nos. [29; 32]. Defendant represented to the Court that it believed the D.C. Circuit's decision changed the definition of an ATDS and asked to file a motion for judgment on the pleadings in that regard. Dkt. No. [32]. The Court granted Defendant's Motion to Stay Discovery pending the resolution of that forthcoming motion, which the Court now addresses. See id.

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(c), a party may move for judgment on the pleadings after the pleadings are closed "but early enough not to delay trial." Fed. R. Civ. P. 12(c). "Judgment on the pleadings is appropriate when there are no material facts in dispute, and judgment may be rendered by considering the substance of the pleadings and any judicially noticed facts." Hawthorne v. Mac Adjustment, Inc., 140 F.3d 1367, 1370 (11th Cir. 1998). In determining whether a party is entitled to judgment on the pleadings, the Court must accept as true all material facts alleged in the non-moving party's pleadings,

3

and view those facts in the light most favorable to the non-moving party. Perez v. Wells Fargo N.A., 774 F.3d 1329, 1335 (11th Cir. 2014). "If a comparison of the averments in the competing pleadings reveals a material dispute of fact, judgment on the pleadings must be denied." Id.

## III. DISCUSSION

The TCPA prohibits, among other things, the use of an ATDS to make calls without "the prior express consent of the called party . . . to any telephone number assigned to a . . . cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).[2] Of course, in order for there to be liability under this provision of the TCPA, a defendant must use an ATDS. The term ATDS is defined by the TCPA as "equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." Id. § 227(a)(1).

Defendant argues that in light of the D.C. Circuit's recent decision in ACA International, Plaintiff has not alleged it used an ATDS. Dkt. No. [33]. Some background is necessary to understand that argument. The Federal Communications Commission ("FCC") is vested with the authority to promulgate rules and regulations necessary to carry out the TCPA's provisions, including interpreting the TCPA. 47 U.S.C. § 227(b)(2); see id. § 201(b); id. § 303. The FCC's rulings have the force of law and, pursuant to the Hobbs Act, 28 U.S.C.

---

[2] There are exceptions to this prohibition, including emergency calls and calls made to collect government debts. 47 U.S.C. § 227(b)(1)(A)(iii). However, none of them are relevant to this case.

4

§ 2342, the Court has no authority to determine whether they are valid. Mais v. Gulf Coast Collection Bureau, Inc., 768 F.3d 1110, 1113 (11th Cir. 2014) ("Congress unambiguously deprived the federal district courts of jurisdiction to invalidate FCC orders by giving exclusive power of review to the courts of appeals."). And when the FCC's regulations are challenged in more than one court of appeals, the panel on multidistrict litigation consolidates those petitions and assigns them to a single circuit. See 28 U.S.C. § 2112. The decisions in those consolidated actions are binding outside of the circuit in which they occur, including on this Court. See Sandusky Wellness Ctr., LLC v. ASD Specialty Healthcare, Inc., 863 F.3d 460, 467 (6th Cir. 2017); Peck v. Cingular Wireless, LLC, 535 F.3d 1053, 1057 (9th Cir. 2008). ACA International was such a consolidated decision, in which the D.C. Circuit reviewed the FCC's 2015 Declaratory Ruling interpreting the TCPA. See 885 F.3d at 691.

The FCC has issued a number of rules throughout the years interpreting the TCPA. In 2003, the FCC interpreted an ATDS as including a predictive dialer, which is "equipment that dials numbers and, when certain computer software is attached, also assists telemarketers in predicting when a sales agent will be available to take calls." In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991 ("2003 Order"), 18 FCC Rcd. 14,014, 14,1091 ¶ 131 (2003). A predictive dialer, when paired with such computer software, has "the capacity to store or produce numbers and dial those numbers at random, in sequential order, or from a database of numbers." Id. However, its "principal

5

feature" is "a timing function, not number storage or generation" so that "when a consumer answers the phone, a sales person is available to take the call." Id. The FCC's 2003 Order found that a predictive dialer was an ATDS for purposes of the TCPA notwithstanding its reliance on lists of numbers as opposed to the past practice of telemarketers using an ATDS "to create and dial 10-digit telephone numbers arbitrarily." Id. at 14,092 ¶ 132. The FCC explained that a predicative dialer had the "basic function" necessary to qualify as an ATDS: "the *capacity* to dial numbers without human intervention." Id.

In 2015, the FCC went a step further. It took the position that an ATDS need only have the capacity to dial random and sequential numbers rather than the present ability to do so. In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991 ("2015 Declaratory Ruling"), 30 FCC Rcd. 7961, 7974 ¶ 15 (2015). The FCC found that its 2003 Order had "implicitly rejected any 'present use' or 'current capacity' test." Id. ¶ 16. "In other words," the FCC explained, "the capacity of an [ATDS] is not limited to its current configuration but also includes its potential functionalities." Id.

In ACA International, the D.C. Circuit set aside the FCC's interpretations of both when a device has the "capacity" to perform the statutorily enumerated functions and what precisely those functions are.[3] 885 F.3d at 700, 703. First, the

---

[3] As set out above, the statutorily enumerated functions necessary to qualify as an ATDS are "(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1).

6

D.C. Circuit held that the FCC's definition of "capacity" was "unreasonably, and impermissibly, expansive." Id. at 700. Because the FCC determined that "capacity" included not just present ability but also potential functionalities, it effectively included all smartphones. See id. at 696 ("[A]ny smartphone, with the addition of software, can gain the statutorily enumerated features of an autodialer and thus function as an ATDS."). Given the ubiquity of smartphone ownership, the breadth of the FCC's definition was too much, particularly given that it had failed to fashion an exemption for standard smartphones. See id. at 697–99.

Second, the D.C. Circuit held that the FCC's "ruling, in describing the functions a device must perform to qualify as an [ATDS], fails to satisfy the requirement of reasoned decisionmaking." Id. at 703. It pointed out that the FCC's ruling on the meaning of "using a random or sequential number generator" was "of two minds on the issue." Id. at 701. The 2015 Declaratory Ruling indicated in some places that "a device must be able to generate and dial random or sequential numbers to meet the TCPA's definition of an [ATDS, but] it also suggest[ed] a competing view"—that is, that predictive dialers that "cannot be programmed to generate random or sequential numbers . . . still satisfy the statutory definition of an ATDS." Id. at 702. The D.C. Circuit explained that while "[i]t might be permissible for the [FCC] to adopt either interpretation," it could not "espouse both competing interpretations in the same order." Id. at 703.

7

Courts are divided on the current definition of an ATDS in the wake of ACA International. Defendant contends that all of the FCC's rulings with regard to definitions of an ATDS were vacated and, thus, the Court can rely only on the statutory language alone. Dkt. Nos. [33] at 13–15; [36] at 3–6. Some courts have found as much. See Herrick v. GoDaddy.com LLC, ___ F. Supp. 3d ___, No. CV-16-00254-PHX-DJH, 2018 WL 2229131, at *7 (D. Ariz. May 14, 2018) ("As a result of the D.C. Circuit's holding on this issue, this Court will not defer to any of the FCC's 'pertinent pronouncements' . . . ."); Marshall v. CBE Grp., Inc., No. 2:16-cv-02406-GMN-NJK, 2018 WL 1567852, at *5 (D. Nev. Mar. 30, 2018) ("In light of this ruling, the Court will not stray from the statute's language . . . ." (footnote omitted)).

On the other hand, Plaintiffs have suggested by way of their supplemental authority that the FCC's prior rulings, such as the 2003 Order, remain valid. See Dkt. No. [35]. Some courts have agreed with this position as well. See Maddox v. CBE Grp., Inc., No. 1:17-CV-1909-SCJ, 2018 WL 2327037, at *4 (N.D. Ga. May 22, 2018) ("Given the ACA Int'l decision, the Court relies on the FCC's 2003 interpretation of § 227(a)(1) to determine if Defendant's system qualifies as an ATDS."); Reyes v. BCA Fin. Servs., Inc., ___ F. Supp. 3d ___, No. 16-24077-CIV-GOODMAN, 2018 WL 2220417, at *11 (S.D. Fla. May 14, 2018) ("[N]owhere in the D.C. Circuit's opinion are the prior FCC orders overruled.").

The Court agrees with the former position. Contrary to the pronouncement of the Reyes court, the D.C. Circuit clearly held that it invalidated

8

*all* of the FCC's pronouncements as to the definition of "capacity" as well as its descriptions of the statutory functions necessary to be an ATDS. Indeed, the FCC specifically challenged the D.C. Circuit's jurisdiction to review its 2003 and 2008 orders in ACA International. See 885 F.3d at 701. The FCC argued that "because there was no timely appeal from those previous orders, it [was] too late now to raise a challenge by seeking review of a more recent declaratory ruling that essentially ratifie[d] the previous ones." Id. The D.C. Circuit disagreed. It held that the FCC's prior rulings were reviewable on two grounds because the 2015 Declaratory Ruling purported to clarify the definitions of its previous orders and also denied petitions for rulemaking on the issue of ATDS functions. Id. And in reviewing the FCC's descriptions of the functions a device must perform to be an ATDS, the D.C. Circuit relied on the FCC's prior orders that "had said the same" as the two competing views present in the 2015 Declaratory Ruling. See id. at 703. The D.C. Circuit "set aside the [FCC's] treatment of those matters" without qualification. Id. As a result, the Court finds that the FCC's prior orders with regard to interpretations of "capacity" and descriptions of the statutorily enumerated functions a device must perform to be an ATDS were vacated in ACA International.

The Court now turns to whether Plaintiff sufficiently alleged that Defendant used an ATDS as defined by the TCPA. The Court finds that Plaintiff's allegations are sufficient. For starters, Plaintiff repeatedly alleges that Defendant called her cell phone using an ATDS. Dkt. No. [1-1] ¶¶ 1, 25–26, 39, 42. A number

9

of courts have found that alone is enough. See, e.g., De Los Santos v. Millward Brown, Inc., No. 13-80670-CV, 2014 WL 2938605, at *3 (S.D. Fla. June 30, 2014) ("To state a claim under the TCPA, Plaintiff need only to allege that Defendant used an autodialer."); Hashw v. Dep't Stores Nat'l Bank, 986 F. Supp. 2d 1058, 1061 (D. Minn. 2013) (finding that where a plaintiff "pleaded that an ATDS was used to make the calls to his cellular phone . . . nothing more is required to state a claim for relief under the TCPA").[4] And although Defendant argues that such allegations are boilerplate and conclusory, see Dkt. No. [33] at 15–16, Plaintiff has bolstered her allegations with additional facts. For instance, Plaintiff alleges she specifically received a call on her cell phone from Defendant using an ATDS on December 16, 2015 (and continued to receive them thereafter). Dkt. No. [1-1] ¶¶ 27–28. And Plaintiff alleges that when she answered Defendant's calls, she heard a "dead air" silence of five or more seconds before a human representative appeared on the line, which Plaintiff states is indicative of the use of an ATDS. See id. ¶¶ 29, 36, 38. The Court finds that these additional allegations support the inference that Defendant used an ATDS. See Jenkins v. LL Atlanta, LLC, No. 1:14-cv-2791-WSD, 2016 WL 1029524, at *4 (N.D. Ga. Mar. 9, 2016).

---

[4] Indeed, as the Hashw court recognized, "without discovery, it would be nearly impossible for a plaintiff to gather sufficient information to allege with specificity the type of dialer used by a defendant." 986 F. Supp. 2d at 1061 n.2; see also Torres v. Nat'l Enter. Sys., Inc., No. ___, 2012 WL 3245520, at *3 (N.D. Ill. Aug. 7, 2012) ("[I]t would be virtually impossible, absent discovery, for any plaintiff to gather sufficient evidence regarding the type of machine used for a communication left on a plaintiff's voicemail.").

Defendant next argues that Plaintiff's more specific allegations about how its ATDS works effectively pleaded her "'out of court by alleging facts that foreclose a finding' in her favor." Dkt. No. [36] at 13 (quoting Villarreal v. R.J. Reynolds Tobacco Co., 839 F.3d 958, 971 (11th Cir. 2016) (en banc)). Specifically, Defendant points out that Plaintiff alleged that calls were made from a "database" or "list of stored telephone numbers," using a predictive dialer without human intervention. See Dkt. No. [33] at 16–22. Defendant contends that these allegations thus "aver equipment not regulated by the TCPA" in light of ACA International. Dkt. No. [36] at 13.

The Court disagrees. As an initial matter, the Court is not convinced that Defendant's interpretation of the TCPA is correct. Again, the TCPA defines an ATDS as having "the capacity" to perform two essential functions: "(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1). Defendant reads the TCPA requirement of "using a random or sequential number generator" to mean "the ability to '*generate* and then dial random or sequential numbers." Dkt. No. [33] at 17 (quoting ACA Int'l, 885 F.3d at 702). Indeed, as set out above, the FCC's 2003 Order seemingly recognized that the TCPA, as enacted, was aimed at telemarketers' use of an ATDS "to create and dial 10-digit telephone numbers arbitrarily." 2003 Order, 18 FCC Rcd. at 14,092 ¶ 132. The Supreme Court's instruction "to give effect, if possible, to every clause and word of a statute," see United States v. Menasche, 348 U.S. 528, 538–39 (1955) (quotation omitted),

11

reinforces this reading because "if the statute meant to only require that an ATDS include any list of database of numbers, it would simply define an ATDS as a system with 'the capacity to store or produce numbers to be called'" without mention of a "generator." See Herrick, 2018 WL 2229131, at *8 (quotation omitted and alteration adopted). Yet on the other hand, Plaintiff points out that the phrase "using a random or sequential number generator" modifies "to be called" in the statute. Dkt. No. [34] at 19–20 (citing 47 U.S.C. § 227(a)(1)). Therefore, the argument goes, a dialing algorithm in predictive dialing software using a set list could still meet the statutory requirement if it automatically generates phone numbers in a random or sequential order without human intervention. See id. The D.C. Circuit recognized this point in ACA International, writing that "[a]nytime phone numbers are dialed from a set list, the database of numbers must be called in *some* order—either in a random or some other sequence." 885 F.3d at 702. This reading is in accord with what the FCC also found in its 2003 Order qualified as an ATDS: "the capacity to dial numbers without human intervention." 2003 Order, 18 FCC Rcd. at 14,092 ¶ 132 (emphasis omitted); see also ACA Int'l, 885 F.3d at 703 (recognizing that the FCC's ruling "that the 'basic function' of an autodialer is the ability to 'dial numbers without human intervention' . . . makes sense given that 'auto' in autodialer—or equivalently, 'automatic' in 'automatic telephone dialing system— would seem to envision non-manual dialing of telephone numbers" (citation omitted)).

This is a difficult question of statutory interpretation to decide because the D.C. Circuit did not say that either interpretation was unreasonable, just that the FCC could not "espouse both competing interpretations in the same order." ACA Int'l, 885 F.3d at 703. In fact, the D.C. Circuit went as far as saying "[i]t might be permissible for the [FCC] to adopt either interpretation." Id. However, the Court need not decide this issue of statutory interpretation today. Even if Defendant's suggested interpretation of the TCPA is correct, it is not mutually exclusive of Plaintiff's allegations. In other words, Plaintiff did not allege that Defendant's ATDS could place calls *only* from a database or list of stored numbers. Simply because Plaintiff stated that Defendant's system could perform those functions does not mean it lacked the capacity to use the "random or sequential number generator" that Defendant argues is required. At this stage in the litigation, the exact system used by Defendant and its parameters are unknown. Instead, the Court must simply accept Plaintiff's allegations as true. See Perez, 774 F.3d at 1335. Because Plaintiff alleged that Defendant used an ATDS with certain functions (and not without any statutorily required function), that is sufficient to survive a motion for judgment on the pleadings.

### IV. CONCLUSION

In accordance with the foregoing, the Court **DENIES** Defendant's Motion for Judgment on the Pleadings [33]. Additionally, the stay on discovery is lifted.

13

**IT IS SO ORDERED** this 25th day of June, 2018.

                                                            **Leigh Martin May**
                                                            **United States District Judge**